UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ELIZABETH A. LACROIX, | ) |
| | ) |
|        Plaintiff | ) |
| | ) |
| v. | )   No. 2:15-cv-303-JAW |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|        Defendant | ) |

**REPORT AND RECOMMENDED DECISION**[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work as a cashier. The plaintiff seeks remand on the bases that the administrative law judge erred in (i) finding that she had a severe impairment of brachial plexitis neuralgia rather than myalgia/myositis and chronic pain syndrome, (ii) failing to apply section 201.14 of the so-called "Grid," Appendix 2 to Subpart P, 20 C.F.R. § 404, to find her disabled, and (iii) giving insufficient weight, in assessing her residual functional capacity ("RFC"), to the opinions of treating sources Garrett Edwards, D.O., and Donna Kim, M.D. *See* Plaintiff's Statement of Errors ("Statement of

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 18, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Errors") (ECF No. 12) at 5-18.[2]  I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, Finding 1, Record at 23; that she had a severe impairment of brachial plexitis neuralgia, Finding 3, *id.*; that she had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that she could lift less than five pounds with her non-dominant right arm and could lift and carry 20 pounds frequently and 50 pounds occasionally with both upper extremities and could never perform overhead reaching with the right upper extremity, Finding 5, *id.* at 24; that she was capable of performing past relevant work as a cashier, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id.* at 27; and that she, therefore, had not been disabled from January 11, 2012, her alleged onset date of disability, through the date of the decision, March 28, 2014, Finding 7, *id.*.  The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

---

[2] In her statement of errors, the plaintiff argued that the administrative law judge should have found severe impairments of fibromyalgia and chronic pain syndrome.  *See* Statement of Errors at 8-11.  However, at oral argument, her counsel acknowledged that, while treating neurologist Leonard C. Kaminow, M.D., suspected that she might have fibromyalgia, he did not diagnose it.  The plaintiff's counsel argued that Dr. Kaminow did diagnose myalgia/myositis.

conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Misidentification of Severe Impairment

The administrative law judge found that the plaintiff suffered from a severe impairment of brachial plexitis neuralgia, noting that she had been treated for right shoulder and arm pain that

reportedly limited her ability to lift heavy objects and had more than a minimal effect on her ability to perform work-related activities.  *See* Record at 24.

This was error.  The plaintiff correctly points out that the record does not support the existence of a medically determinable impairment of brachial plexitis neuralgia.  *See* Statement of Errors at 5-6.  "Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s)[.]"  Social Security Ruling 96-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015) ("SSR 96-3p"), at 117.  While, as of March 13, 2012, Dr. Kaminow suspected the plaintiff might have "an idiopathic brachial plexitis[,]" Record at 317, he abandoned that possible diagnosis as of May 8, 2012, stating that it "seem[ed] more likely she has a myositis[,]" *id.* at 313.  There is no other reference of record to that condition other than in physical therapy notes.  *See, e.g., id*. at 399-401, 404-05.  As the plaintiff's counsel observed at oral argument, a physical therapist is not an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment.  *See, e.g*., 20 C.F.R. § 404.1513(a).

Nonetheless, as the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 14, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim[,]" *Bolduc v. Astrue*, No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

The plaintiff contended, in her statement of errors, that this error was not harmless because the administrative law judge should have found that she had severe impairments of fibromyalgia

4

and chronic pain syndrome, which involve pain in the muscles and joints, rather than pain due to a neurologic cause. *See* Statement of Errors at 6. She asserted that, if the administrative law judge had properly identified her impairment(s), she would have been required to give greater weight to her description of her pain/weakness and to the RFC opinions of Drs. Edwards and Kim. *See id*. at 6-7. Yet, as noted above, the plaintiff's counsel acknowledged at oral argument that Dr. Kaminow merely suspected that the plaintiff had fibromyalgia and did not diagnose it. With respect to the plaintiff's asserted chronic pain syndrome, the commissioner correctly notes that Dr. Kim merely checked a box on a questionnaire indicating that the plaintiff had that condition, which does not suffice to establish the existence of a medically determinable impairment. *See* Opposition at 14; Record at 727; SSR 96-3p at 117.

Nor, from all that appears, is myalgia/myositis a medically determinable impairment. While Dr. Kaminow, who saw the plaintiff on four occasions from March 13, 2012, through July 5, 2012, recorded myalgia and myositis among his "assessments" on each of those occasions, *see* Record at 311, 313, 315, 317, his final treatment note indicated continuing uncertainty about the etiology of her pain:

> The [plaintiff] does have trigger points which are predominantly right-sided. I suspect she does have fibromyalgia but would like to see the results of her allergy testing. [A]t this point she states she cannot work. If that is the case, she should have a functional work capacity done by a physical therapist. If she continues to progress it may be worth referring her to a rheumatologist but I will leave this up to Dr. Kim.

*Id*. at 311.

With the benefit of review of then-available evidence that included the Kaminow treatment notes, neither of the two agency nonexamining consultants whose opinions are of record, Donald Trumbull, M.D., and Richard T. Chamberlin, M.D., found medically determinable impairments of myositis or myalgia. *See id*. at 78, 80, 89, 92. Indeed, Dr. Chamberlin stated that the medical

5

evidence failed to reveal any medically determinable impairment relative to the plaintiff's right shoulder. *See id*. at 92.³

As counsel for the commissioner contended oral argument, because the record amply supports a finding that there is no medically determinable shoulder impairment, in assessing any shoulder limitations whatsoever, the administrative law judge reached an RFC determination more favorable than the record supports. The plaintiff's counsel implicitly acknowledged as much when, at oral argument, he sought remand for a new hearing for an opinion by a medical expert regarding what, *if any*, severe impairment(s) his client had. In such circumstances, there cannot be harmful error. *See, e.g.*, *Peak v. Colvin*, No. 2:15-cv-67-JHR, 2015 WL 7681256, at *3 (D. Me. Nov. 24, 2015) ("[I]n this district, a plaintiff is not entitled to remand on the basis of an RFC that is more favorable than the evidence would otherwise support.").

Alternatively, even assuming *arguendo* that the administrative law judge should have found that the plaintiff had a severe, medically determinable impairment of myalgia/myositis, the plaintiff fails to make a persuasive argument that the misidentification of the shoulder impairment was outcome-determinative.

First, regardless of the etiology of the shoulder pain, the administrative law judge took it into account, finding the plaintiff's complaints partially credible. *See* Record at 27. She relied, in reaching that credibility determination, on the plaintiff's level of activity, findings on objective examination, and response to treatment, *see id*. at 25-26, and there is no reason to believe that a change in identification of the impairment would have had any bearing on her rationale.

---

³ Dr. Trumbull evidently also found that the plaintiff had no medically determinable shoulder impairment. Both he and Dr. Chamberlin indicated that the plaintiff had two medically determinable physical impairments, asthma and dysfunction – major joints, *see* Record at 78, 89; however, the latter impairment appears to have been related to the plaintiff's claimed toe pain. Both Drs. Trumbull and Chamberlin stated that the plaintiff's asthma and toe impairments were nonsevere and that the objective evidence on file did not support any other medically determinable impairment. *See id*. at 80, 92. Even assuming that Dr. Trumbull found a medically determinable shoulder impairment, he deemed it nonsevere.

Second, the plaintiff fails to make a persuasive case that the change in identification of her impairment would have required the administrative law judge to give any additional weight to the Edwards and Kim opinions. *See* Statement of Errors at 8-11. In any event, I find no reversible error in her treatment of those opinions for the reasons discussed below.

One further point remains: as part of her Step 2 argument, the plaintiff contends that the administrative law judge failed to call a medical advisor to aid in resolving questions about the etiology of her shoulder pain as required by Social Security Administration, Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-5-34. *See* Statement of Errors at 7-8. She argues that, because the administrative law judge clearly expressed doubt as to the etiology of her symptoms, she should have scheduled a supplemental hearing with a medical expert present, or sent interrogatories to a medical expert, to clarify the nature of her severe physical impairments. *See id*.

However, as the commissioner argues, *see* Opposition at 16, the administrative law judge did not express doubt about the etiology of the plaintiff's condition, *see* Record at 24. In any event, the HALLEX section at issue merely provides that an administrative law judge "*may* need to obtain" a medical expert's opinion if she has a question about the etiology of a disease and how it may affect a claimant's ability to engage in work activities. HALLEX § I-2-5-34 (emphasis added). It does not mandate that a medical expert be contacted in such circumstances. *See id*.

### B.  Failure To Apply Grid § 201.14

The plaintiff next argues that the administrative law judge erred in not finding her disabled pursuant to Grid § 201.14, which directs a finding of disability for individuals who are limited to sedentary work, are closely approaching advanced age (that is, age 50-54), and are high school graduates, or more, with no transferable skills. *See* Statement of Errors at 11-14; Grid § 201.14.

7

She relies on the Edwards and Kim opinions, which she says indicate that she is capable of at most sedentary work in that she could not sit for up to six hours of an eight-hour workday as required for both light-duty and medium-duty jobs and that the more activity she performs, the worse her pain becomes. *See* Statement of Errors at 13-14. She asserts that her past relevant work was light-duty, not medium-duty. *See id*. at 11.

      This argument is unavailing for at least three reasons. First, as noted above, there appears to be no evidence of record that the plaintiff has a medically determinable shoulder impairment. Indeed, as the administrative law judge observed, *see* Record at 26, Dr. Edwards stated that "an absolute, organic cause/etiology behind [the plaintiff's] pain symptoms has not been clearly identified[,]" *id*. at 698. While Dr. Edwards went on to note that he had "no reason to doubt her integrity or the real-ness of her pain symptoms to her[,]" *id*., for purposes of Social Security disability benefits, even genuine symptoms cannot be found to restrict a claimant's work activities unless they are attributable to a medically determinable impairment, *see* SSR 96-3p at 117. Second, as discussed below, I find no material error in the administrative law judge's handling of the Edwards and Kim opinions. Third, as counsel for the commissioner pointed out at oral argument, medium work does not require an individual to sit for up to six hours in an eight-hour workday. *See, e.g*., Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-10"), at 30 ("A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time."). The same is true of light work. *See id*. at 29 ("Relatively few unskilled light jobs are performed in a seated position.").

8

### C. Handling of Edwards and Kim Opinions

Dr. Edwards, an osteopathic physician who provided osteopathic manipulative therapy for the plaintiff's chronic right upper extremity pain, completed a questionnaire dated February 7, 2014, checking a box indicating that he found credible the plaintiff's subjective complaints that she had a limited ability to use her right upper extremity for repetitive activity on a sustained basis. *See* Record at 697. He explained: "I believe her symptoms are very real to her." *Id*. He also checked a box indicating that he believed the plaintiff had "a truncated and reduced ability to perform activities requiring good use of both hands on a sustained basis, i.e., day in day out[.]" *Id.* Finally, he checked a box indicating that he believed the plaintiff had good days and bad days in her ability to use her right upper extremity. *See id*. He explained that her symptoms "have always been very activity/circumstance dependent[.]" *Id*.

He summarized:

> Although an absolute, organic cause/etiology behind [the plaintiff's] pain symptoms has not been clearly identified, I have no reason to doubt her integrity or the real-ness of her pain symptoms to her. As such, I would suspect that she will continue to have waxing/wan[]ing (generally activity dependent) pain symptoms in a pattern similar to what has been experienced since symptom onset.

*Id*. at 698.

Dr. Kim, the plaintiff's primary care physician, completed a questionnaire dated February 13, 2014, in which she checked a box indicating that she agreed with Dr. Edwards' responses to questions regarding the credibility of the plaintiff's subjective complaints concerning her right upper extremity, her inability to perform activities requiring good use of both hands on a sustained basis, and her experience of good days and bad days in her ability to use her right upper extremity. *See id*. at 727. She described the plaintiff's pain as occurring in her bilateral upper back/shoulders and bilateral arms/hands. *See id*. She checked a box indicating that she believed that, as a result of the plaintiff's chronic pain symptoms, she had been unable since February 2, 2013, to sustain

9

any full-time job. *See id*. She summarized: "She has frequent flares of pain that ha[ve] prohibited her from maintaining a job that requires using a computer + prolonged sitting[.]" *Id*. at 728.

The administrative law judge noted that Dr. Edwards had found no absolute cause/etiology for the plaintiff's pain symptoms but had stated that he believed she would continue to have waxing/waning (generally activity-dependent) symptoms. *See id*. at 26. She stated that she was "not persuaded by Dr. Donna Kim's opinion that the [plaintiff] has been unable to [sustain a full-time job], as it is conclusory in nature, fails to give disabling limitations and is an assessment of the [plaintiff's] ability to engage in basic work like activities, which is an opinion reserved to the Commissioner." *Id*. (citation omitted). She explained:

> In particular, the undersigned notes that while physical examinations showed some limitation in range of motion of the right upper extremity, examination of the left upper extremity was entirely within normal limits. Accordingly, the undersigned does not assign [the opinion] controlling weight . . . . Nevertheless, Dr. Kim's observations and findings are not ignored and have been carefully considered in providing insight as to functional ability and how they affect the [plaintiff's] ability to work.

*Id*. at 26-27 (citations omitted).

The administrative law judge stated that she gave "great weight" in assessing the plaintiff's RFC to an April 13, 2013, report of agency examining consultant Richard Stockwell, D.O., which she characterized as supported by "the overall medical record of evidence as a whole[.]" *Id*. at 26. She explained:

> The [plaintiff] complained of right shoulder pain with pain throughout the lateral anterior aspect of her shoulder. Upon physical examination, range of motion of her shoulders, elbows, wrists, MCPs [metacarpophalangeal joints of the fingers], PIPs [proximal interphalangeal joints of the fingers], opposition and grip were *all within functional range*; her strength was normal at 5/5 bilaterally. Dr. Stockwell noted the [plaintiff] did have some pain in the right shoulder with rotator cuff strength testing. Based on the evaluation, Dr. Stockwell did not see any inability for the [plaintiff] [t]o perform work activities in sitting, standing, walking, lifting, carrying, bending, handling objects, hearing, speaking, and traveling with the exception of her right shoulder. Although the [plaintiff] subjectively reported severe pain with elevation of the right arm, Dr. Stockwell noted she had normal

>strength in the right arm. Therefore, Dr. Stockwell recommended the [plaintiff] not perform repetitive overhead lifting.

*Id.* (emphasis in original). *See also id*. at 508-10 (Stockwell report).

The plaintiff complains that the administrative law judge failed to address Dr. Edwards' opinions that (i) her subjective complaints that she had limited ability to use her right upper extremity were credible, (ii) she had a truncated and reduced ability to perform activities requiring good use of both hands on a sustained basis, and (iii) she had good days and bad days, depending on her activities/circumstances. *See* Statement of Errors at 15-16. She asserts that, as a result, the administrative law judge's evaluation of the Edwards opinion was materially incomplete. *See id*. at 16.

She contends that, while the administrative law judge declined to accept Dr. Kim's opinion that she was unable to sustain full-time work, she ignored Dr. Kim's specific limitations, including her adoption of restrictions found by Dr. Edwards and her statement that the plaintiff was unable to engage in prolonged sitting. *See id*. at 16-17. She asserts that, despite professing to have carefully considered the Kim opinion, the administrative law judge could not have done so because she assessed the plaintiff with an ability to perform medium work. *See id*. at 17. She asserts that Drs. Edwards' and Kim's finding that she had a truncated and reduced ability to perform activities requiring good use of both hands on a sustained basis in itself precludes full-time work. *See id*. at 17-18; *see also* Social Security Ruling 83-14, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-14"), at 43 ("[A]t all exertional levels, a person must have certain use of the arms and h[an]ds to grasp, hold, turn, raise, and lower objects.").

The commissioner acknowledges that the administrative law judge failed to address certain aspects of the Edwards opinion. *See* Opposition at 17. However, she disputes that the omission was material, pointing out that, rather than assessing specific limitations, Dr. Edwards vaguely

11

indicated that the plaintiff would have bad days during which she would experience difficulty using her right upper extremity on a repetitive basis. *See id*. She asserts that the administrative law judge appeared to agree, limiting her to lifting no more than five pounds with her right arm and no overhead reaching on the right. *See id*.

She argues that, in any event, Dr. Kim incorporated Dr. Edwards' opinions by reference, and the administrative law judge thoroughly analyzed the Kim opinion. *See id*. at 18.

I agree that the administrative law judge's failure to address certain of the Edwards and Kim opinions is harmless.

That Dr. Edwards found the plaintiff's subjective complaints credible, and Dr. Kim agreed, is of no moment. The administrative law judge conducted her own credibility analysis, which the plaintiff does not separately challenge.

Dr. Edwards' finding, with which Dr. Kim agreed, that the plaintiff had a truncated and reduced ability to perform activities requiring both hands on a sustained basis is indeed vague. "Truncated and reduced" are relative terms: one could retain the ability to perform such activities occasionally rather than frequently, or frequently rather than constantly. In any event, as the commissioner points out, *see id*. at 19, the administrative law judge made clear that she disagreed that the plaintiff was restricted in any respect in her ability to use her dominant left hand/arm, explaining, "while physical examinations showed some limitation in range of motion of the right upper extremity, examination of the left upper extremity was entirely within normal limits[,]" Record at 26. This finding, in turn, was supported by substantial evidence in the form of the Stockwell report, which the administrative law judge accorded great weight. *See id*. at 26, 509-10.

Dr. Edwards' finding, with which Dr. Kim agreed, that the plaintiff had good days and bad days and that her symptoms waxed and waned is also vague and does not constitute a specific limitation as such. In any event, as the commissioner argues, *see* Opposition at 17, the administrative law judge seemingly accounted for periods when such symptoms waxed by limiting the plaintiff to lifting less than five pounds with her non-dominant right hand and never performing overhead reaching with her right upper extremity, *see* Finding 5, Record at 24.

Finally, while the administrative law judge failed to address Dr. Kim's opinion that the plaintiff could not maintain a job that required computer usage or prolonged sitting, the plaintiff identifies no medically determinable impairment that could have necessitated such limitations. In any event, as counsel for the commissioner pointed out at oral argument, one need not be capable of computer usage or prolonged sitting to be able to perform the full range of medium work. *See, e.g.*, SSR 83-10 at 30 (full range of medium work requires standing or walking off and on for approximately six hours of eight-hour workday, and sitting "may occur intermittently during the remaining time"). The same is true of light work. *See, e.g., id*. at 29.

Remand, accordingly, is not warranted on the basis of the administrative law judge's handling of the treating source opinions.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 5th day of May, 2016.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
